I C  [If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**RECEIVED**

Natasha Logan )
_____ )
_____ )
_____ )
(Name of the plaintiff or plaintiffs) )
)
v. )
United Airlines )
_____ )
_____ )
_____ )
(Name of the defendant or defendants) )

JUL 17 2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MN

CIVIL ACTION

25-cv-08177
Judge Mary M. Rowland
Magistrate Judge Keri L. Holleb Hotaling
Random Cat 1

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1.  This is an action for employment discrimination.

2.  The plaintiff is Natasha Logan of the county of Cook in the state of Illinois.

3.  The defendant is United Airlines, whose street address is 233 S. Wacker Dr,
(city) Chicago (county) Cook (state) Illinois (ZIP) 60606
(Defendant's telephone number) (____) – _____

4.  The plaintiff sought employment or was employed by the defendant at (street address)
1501 W Shure Dr (city) Arlington Heights
(county) Cook (state) Illinois (ZIP code) 60004

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

(a) ☐ was denied employment by the defendant.

(b) ☒ was hired and is still employed by the defendant.

(c) ☐ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) *January* (day) *09*, (year) *2023*.

7.1 *(Choose paragraph 7.1 or 7.2, do not complete both.)*

(a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐ *has not* ☒ *has* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

(i) ☒ the United States Equal Employment Opportunity Commission, on or about (month) *May* (day) *14* (year) *2024*.

(ii) ☐ the Illinois Department of Human Rights, on or about (month)_____ (day)_____ (year)_____.

(b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☒ YES. ☐ NO, **but plaintiff will file a copy of the charge within 14 days.**

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

7.2 The defendant is a federal governmental agency, and

(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting the acts of discrimination indicated in this court complaint.

2

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b) The plaintiff received a Final Agency Decision on (month)_____
(day) _____ (year) _____.

(c) Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ YES  ☐ NO, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ YES  ☐ NO, but a copy will be filed within 14 days.

8. *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐ the United States Equal Employment Opportunity Commission has not issued

a *Notice of Right to Sue.*

(b) ☒ the United States Equal Employment Opportunity Commission has issued a

*Notice of Right to Sue,* which was received by the plaintiff on
(month) April (day) 22 (year) 2025 a copy of which
*Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☒ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

3

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c)☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d)☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e)☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f)☐ Religion (Title VII of the Civil Rights Act of 1964)

(g)☐ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12. The defendant [*check only those that apply*]

(a)☐ failed to hire the plaintiff.

(b)☐ terminated the plaintiff's employment.

(c)☐ failed to promote the plaintiff.

(d)☐ failed to reasonably accommodate the plaintiff's religion.

(e)☐ failed to reasonably accommodate the plaintiff's disabilities.

(f)☒ failed to stop harassment;

(g)☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h)☒ other (specify): No Raise, false performance review

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

I had several positive recognitions, no write ups, no complaints. At the end of the year the manager said I had poor performance with no proof. They refused my raise. I took another position in the company in another state and I have not had any issues.

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ YES ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☒ Direct the defendant to (specify): I would like my raise that is owed to me. Moving expenses and doctor expenses, due to stressful environment.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)

_____

(Plaintiff's name)

Natasha Logan

(Plaintiff's street address)

6633 N. Milwaukee Ave #137

_____

(City) Niles (State) IL (ZIP) 60714

(Plaintiff's telephone number) 713-819-1316

Date: 7/17/25

6

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Houston District Office
1919 Smith Street, 6th Floor
Houston, TX 77002
(346) 327-7700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/22/2025

**To:** Natasha Logan
11114 Kirkwell Dr.
Houston, TX 77089
Charge No: 460-2024-05095

EEOC Representative and email:  SAMANTHA SALAZAR
Investigator
Samantha.Salazar@eeoc.gov

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 460-2024-05095.

On behalf of the Commission,

Digitally Signed By:Rayford O. Irvin
04/22/2025
Rayford O. Irvin
District Director

**cc:** Alexander S Dahle, Attorney at Law
Jackson Lewis P.C.
150 N Michigan Ave., Ste. 2500
Chicago, IL 60601

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 460-2024-05095 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 460-2024-05095 to the District Director at Rayford O. Irvin, 1919 Smith Street 6th Floor, Houston, TX 77002.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC  FEPA | 460-2024-05095 |

| Texas Workforce Commission Civil Rights Division | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| NATASHA LOGAN | (713) 819-1316 | 1981 |

| Street Address |
|---|
| 11114 KIRKWELL DR |
| Houston, TX 77089 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| UNITED AIRLINES | 501+ Employees | (872) 825-8603 |

| Street Address |
|---|
| 609 MAIN ST |
| Houston, TX 77002 |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest | Latest |
| Race | 01/30/2024 | 04/11/2024 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. Since January 9, 2023, I have been employed by Respondent as an Associate Analyst. On January 30, 2024, I received a "low impact" performance evaluation allegedly due to my high error rates of 50%, whereas the team average error rate was at 55%. To my knowledge, my coworkers such as, Sandra Tavira, Hamangi Gawade, and Nikil Jadhav did not receive an unsatisfactory job performance for their high error rates of 50% or higher. Due to this evaluation, I was also denied of the subsequent merit increase. On April 11, 2024, I was told by Michelle Walvoord, Assistant Manager, that I would be written up if I fail to improve my error rate. Prior to this, I have seven employee recognitions in a year for outstanding performance. I am always on time and do all my work.

II. I believe I have been discriminated against due to my race (Black) and color, in violation of Title VII of the Civil Rights Act of 1964, as amended

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.  **Digitally Signed By: NATASHA LOGAN**  05/14/2024  *Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Page 1 of 2

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**Page 2 of 2**

*WITNESS # 1*

To whom it may concern:

Hello, I would like to remain anonymous, as showing support will be detrimental to my career with United Airlines. There is a real fear and very real possibility that I will be fired if my name is provided. I will sign this letter with a 4 digit code, if in the future you require further information.

I have worked with various companies both public and private and have extensive knowledge of different company cultures and management styles. I consider myself a professional and experienced employee.

United Airlines is a well-established public company with a strong sense of compliance to both external and internal agencies. When I joined the company, I was excited knowing that I would work with a company with a positive culture of inclusion and diversity.

Currently, I am in the payroll department, under Anna Mikuta. There are many instances that struck me as inconsistent with policy, but I shrugged them off as minor transgressions. During the first week, Anna mentioned her manager Russ was a very handsy person, and to not take offence if he hugged us, but if we were uncomfortable with that, we could let her know, and she would inform Russ to 'back off'. I found this statement to be in direct conflict with our compliance training and very early warning. It was understood that she and Russ have a strong personal relationship, and discussing being uncomfortable would mean being singled out. To be honest, I did not find his interactions uncomfortable or to equate harassment but her comment made me uncomfortable, and apprehensive.

I believe Anna creates a narrative of the people she hires, and will search and find any instance that will confirm her bias. I believe she is biased against people of color and hires people of color and treats us like disposable work source. It is difficult to explain how you can sense the disdain for other races when we do have a very diverse team. It is present in the way we are treated versus how our white counter part is treated. It is different in the distribution responsibilities , how risks are absorbed, how strictly we are valued, and how quickly we are dismissed.

Example: by the time I was with United one year, I was fully capable and designated as a processor. Meanwhile, the only white non supervisor employee (employee G) on the team, was still free from working mail, let alone processing.

Employee G is free from consequences when complaining about tasks given. She is given more time to complete the tasks, she is treated respectfully when requesting assistance. She is given support from other team members immediately. When a cowoker, Shelly, requested support in a meeting, Anna laughed and said we did not get support, because processing was a one-person job. When she was later asked to process an off cycle by 3pm so the team could go to happy hour, she was rushed and pressured. Meanwhile, employee G is given full patience and confirms off-cycles at 7 to 8pm.

To be clear, this is not a complaint about employee G, she is not responsible for the disparaging treatment, but she does highlight the difference in treatment, and Anna's ability to be understanding, but choosing to give different treatment. I also do not believe that United is at fault for Anna's behavior, because it has not been made aware of the existing problem.

Anna uses micromanagement as a form of punishment across the team, this includes her supervisors. They are treated in the same manner, with preference given to our white supervisor. An example of this can be found in our evaluations. I am under a different manager, but work with the worker's comp team in creating RDs. This is additional work given to assist the workers' comp team, under Michell Walvoord. My training for RD's was rushed and interrupted. There was no SOP provided and I had to create my notes on the process. This was the case for everyone else, and we were asked to not discuss or help each other, as they would not give the correct guidance. Very consistently, the feedback received was that everyone on the team was making the same mistakes, but further training was not provided. As a new employee, everything process was new, and every process training was given without an SOP. It is confusing to be told the entire team is at 50 to 60% error rate, and not provide further training. To be clear, some of the errors were minor, and did not affect the result of the calculations. So if you had a typo, it would be included in the error rate. It was later determined that some of the errors being factored in would not be counted as they were minor. This was understandable but shocking, as this error rate was a contributing reason for the termination of Shelly, and was mentioned in tmy evaluation.

While most of us work with three supervisors on different projects, only our Michelle provides input on all our evaluations. She provided negative feedback on my evaluation. While we had numerous meetings in which she expressed the error rate were high across the board, our

evaluation were negatively impacted due to her input. No other supervisor provides an assessment to employees of other supervisors.

There are many instances of disrespect and micro aggression to list. I believe if given the opportunity to discuss and be truly free from retaliation, all my teammates will have similar experiences to share. At face value there is a sense of harmony, but it is dishonest harmony. We all want to work for United, but we are aware that Anna seems to be above United's radar. I think the reality is she has been able to remain under the radar because she removes anyone she suspects will complain. If you look at employment history, you will see a common theme. People of color are hired, and people of color are terminated, and extremely high turnover rate. The employees that have been with the company the longest all share the "we paid our dues" story. Because the only way to survive in this team is to endure. Work ethic, productiveness and effectiveness, will take a back seat if you a different race.

Anna has a lot of experience and is very knowledgeable, but she is also a very biased and toxic manager. She leads with disrespect and uses her ability to fire as motivators. United hires diverse and capable people, and Anna punishes the diversity, and forces our team to fit her mold. Like she says to any new hire "everything you know, doesn't matter, we do things differently and your previous experiences will hinder your progress". She does not like diversity, she strives for conformity and silent compliance.

I hope this letter does not fall on deaf ears, for myself and my co-workers. For co-workers that left by their force choice, and those that were wrongfully terminated, I hope you are able to make an impact in our department. There is a real opportunity to have our department truly fit the United values.

Sincerely,

Anonymous Employee

7233

*Witness # 2*

To whom it may concern,

Please accept this letter as a complaint of racial discrimination by Anna Mikuta, a Caucasian female, the Payroll Manager at United Airlines out of Houston, Texas. I am a Hispanic woman who feels like I was treated differently and discriminated based on my race and age and I was treated like a captive.

When working in the "Flight" payroll 95% of our staff are minority with the same BAD and HOSTILE treatment.

Here is a description of the department while I was working there.

**3 Caucasian Women** (one woman is the Manager, one woman is the assistant manager)

**7 Hispanics – 1 man and 6 women** (one woman is the assistant manager, one woman is the managers friend and ride to work, one woman is married to an HR employee who passed while working for the department)

**2 African American Women** (one woman is the assistant manager)

**2 Asian – 1 man and 1 woman** (woman is married to a United Pilot, Man is of the LGBTQ community)

*The reason I mentioned the specifics in parenthesis is because those employees have validations for some lesser harsh treatment.

Anna Mikuta is a smart woman. She has 3 different races under her to cover all diversity claims. She knows how to work the system and has gotten away with this treatment for decades. She is racist, discriminatory, and creates a hostile environment based on illegal factors especially when it comes to race.

Apart from the managers, the one Caucasian employee has been there for about 6 years and her expectations are lower and the tolerance for deadlines and errors are higher and there are no repercussions as they are with all minority employees, which are publicly announced and just degrading.

The minority employees are expected to do more than the seasoned Caucasian employee.

Example: When Caucasian employee is processing an off cycle, they do not process as quickly as needed and are allowed multiple days. When I, the Hispanic employee had to process the off-cycle payroll, I had the day to complete and could not stop unless my job was completed. This Caucasian employee was learning how to do off cycles when it became a desperate situation when she had already been with the company for 5 plus years and because normally, she only had worker's compensation duty. Meanwhile I was there for 5 months and had to master this process along with workers compensation tasks. I also was once pressured by Anna Mikuta to complete my off cycle sooner that the end of the day required time because she wanted to attend Happy Hour and didn't want to have to worry about approving my job while under the influence of alcohol.

My Caucasian and seasoned coworker had the benefit of more training because of her race and age while I, the new employee had more duties and less, not to mention horrible training.

When I first arrived at the department, the other payroll department warned us newbies about the high turnover rate and the treatment people received due to race. That department has very small turnover rate and is very diverse, however they do not have a Caucasian manager either.

As a Hispanic payroll processer, I would get reprimanded and ultimately let go for a couple of situations (due to shorter time allowed) for inserting the wrong date for payroll files. I would change the dates

when spotted and correct before process was complete and it was processed with no issues, but I was constantly ridiculed for it, something that was in fact an error but was completely minor and corrected before any damage. However, we then come into a situation where the Caucasian assistant manager disregarded a legal situation regarding the company, United Airlines and a settlement, and ultimately costed the company to be required to payout over $900,000.00. The assistant manager was coddled for her massive error and not ridiculed or reprimanded. This was a huge and grounds for termination, but it was swept under the rug because of her race and relationship with the manager.

Anna Mikuta wants diversity to be visible only to say that she and her department are diverse, but what they are looking for is minorities that are desperate for work and will not speak up. The minute I spoke up for myself, it was the first step for them to realize I would not let myself be discriminated and they found every way to get rid of me. If you do the research and look at the turnover rate and the specific employees, you will for sure be shocked by the obvious.

When I worked on some worker's compensation duties, we were told across the board that entire team error rate was at 50%. I was then singled out along with another Hispanic coworker for the mistakes every single person on the team had. I was not even a part of the worker's compensation team so this was and additional task that was asked of us to help out with and put my job duties aside when there was a full team designated to just worker's compensation, because the Caucasian manager did not want her team to fall behind, while the other two minority managers were required to hand over their employees to ensure that in fact did not happen. Yet, their teams were staying late every night including them some days while the Caucasian assistant manager was logged off at the exact minute required to end the day.

My duties along with the other minorities were numerous verses the one Caucasian employee without a manager title who only had one duty.

Another situation relating to religion and race standpoint came from the assistant manager, Dawn Knight. Dawn would constantly remind us that she was "The First Lady" of her husband's church. That he was a pastor and always mentioned her church and her God. She would be loudly judgmental of morality and religion and constantly belittled us for maybe our weekend plans or simply just made us uncomfortable. She would constantly try and use her faith as a defense mechanism because she is scared of Anna Mikuta so all her errors she would throw down on her team because she knew that Anna felt a certain way towards the two Hispanics on her team and she needed Dawn because she would carry out whatever was asked of her even if it was illegal when it came to being the fall guy for racism. Like if racism was allowed because Anna wasn't always specifically doing it, she would have her African American assistant manager pass along the treatment and her thought process was for sure it isn't racism because Dawn is a minority as well.

My Hispanic co-worker resigned because they felt targeted. It is very well known the steps the management will take to get rid of employees, so they knew they were next on the chopping board. They chose to resign and when that happened management was in a bind because of all the duties this person carried on their plate and management was no longer on their timeline to line someone up and train so they basically begged for that employee to not leave but this person was able to get out.

There are employees getting medical attention for the treatment received and it needs to stop. I was a target based on multiple factors, but the main one was because of my race.

Thank you,

Ex-employee for United Airlines

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Houston District Office**
1919 Smith Street, 6th Floor
(346) 327-7700
Website: www.eeoc.gov

## CONFIDENTIALITY AGREEMENT

EEOC NUMBER: 460-2024-05095

1. I agree to participate voluntarily in mediation in an effort to resolve the charge(s) filed with the EEOC.

2. I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding. Confidentiality, however, will not extend to threats of imminent physical harm or incidents of actual violence that occur during the mediation.

3. Any communications between the ADR Coordinator and the mediator(s) and/or the parties are considered dispute resolution communications with a neutral and will be kept confidential.

4. I agree not to subpoena the mediator(s) or compel the mediator(s) to produce any documents provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. I further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

5. Mediation sessions will not be recorded or transcribed by the EEOC, the mediator or any of the participants. Information including records or documents generated during mediation will be kept confidential. Mediators have been instructed to destroy personal notes (those not shared with any party) at the conclusion of the mediation of the charge. Parties or their representatives are not prohibited from retaining their own notes. However, the EEOC will not maintain any such notes or records as part of its record keeping procedures.

6. In the event a mediation session(s) is conducted via telephone or video conferencing, I agree that all participants to such mediation session(s) or those that are otherwise present for the remote mediation, must identify themselves at the beginning of the mediation session and sign this Confidentiality Agreement. I understand that no one else may be present in the location away from the convening mediator unless their names and titles and/or roles are disclosed to the convening mediator and have signed the Confidentiality Agreement.

7. If a settlement is reached by all the parties, the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement. If the charge(s) is not resolved through mediation, it is understood by the parties that the charge(s) will be transferred to the investigative unit for further processing.

**Digitally Signed By: NATASHA LOGAN**

**05/21/2024**

_____
Charging Party

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Houston District Office
1919 Smith Street, 6th Floor
(346) 327-7700
Website: www.eeoc.gov

## AGREEMENT TO MEDIATE

CHARGE NUMBER: 460-2024-05095
FEPA NUMBER:

Charging Party: NATASHA LOGAN
Respondent: UNITED AIRLINES

This is an agreement by the above parties to participate in mediation in the above referenced charge. The parties understand that mediation is a voluntary process, which may be terminated at any time. The parties and, if they desire, their representatives and/or attorneys, are invited to attend a mediation session. No one else may attend without the permission of the parties and the consent of the mediator(s).

The mediator(s) will not function as the representative of either party. However, the mediator(s) may assist the parties in crafting a settlement agreement. Each party acknowledges being advised to seek independent legal review prior to signing any settlement agreement. The parties acknowledge that they have received a copy of the Mediation Fact Sheet. The parties acknowledge that the mediator(s) possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.

The parties acknowledge that participation in the scheduled mediation does not constitute an admission by either party of any wrongdoing or of a violation of the laws enforced by EEOC. Furthermore, the Charging Party acknowledges that participation in the scheduled mediation by the Respondent does not commit the Respondent to providing a monetary resolution of the matter.

The parties recognize that mediation is a confidential process and agree to abide by the terms of the attached Confidentiality Agreement. The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator(s) is required to report to EEOC any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.

**Digitally Signed By: NATASHA LOGAN**

**05/21/2024**

_____
Charging Party

**NATASHA LOGAN**_____
Charging Party Printed Name

_____
Charging Party Phone

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Houston District Office**
1919 Smith Street, 6th Floor
(346) 327-7700
Website: www.eeoc.gov

## CONFIDENTIALITY AGREEMENT

EEOC NUMBER: 460-2024-05095

1. I agree to participate voluntarily in mediation in an effort to resolve the charge(s) filed with the EEOC.

2. I agree that all matters discussed during the mediation are confidential, unless otherwise discoverable, and cannot be used as evidence in any subsequent administrative or judicial proceeding. Confidentiality, however, will not extend to threats of imminent physical harm or incidents of actual violence that occur during the mediation.

3. Any communications between the ADR Coordinator and the mediator(s) and/or the parties are considered dispute resolution communications with a neutral and will be kept confidential.

4. I agree not to subpoena the mediator(s) or compel the mediator(s) to produce any documents provided by a party in any pending or future administrative or judicial proceeding. The mediator(s) will not voluntarily testify on behalf of a party in any pending or future administrative or judicial proceeding. I further agree that the mediator(s) will be held harmless for any claim arising from the mediation process.

5. Mediation sessions will not be recorded or transcribed by the EEOC, the mediator or any of the participants. Information including records or documents generated during mediation will be kept confidential. Mediators have been instructed to destroy personal notes (those not shared with any party) at the conclusion of the mediation of the charge. Parties or their representatives are not prohibited from retaining their own notes. However, the EEOC will not maintain any such notes or records as part of its record keeping procedures.

6. In the event a mediation session(s) is conducted via telephone or video conferencing, I agree that all participants to such mediation session(s) or those that are otherwise present for the remote mediation, must identify themselves at the beginning of the mediation session and sign this Confidentiality Agreement. I understand that no one else may be present in the location away from the convening mediator unless their names and titles and/or roles are disclosed to the convening mediator and have signed the Confidentiality Agreement.

7. If a settlement is reached by all the parties, the agreement shall be reduced to writing and when signed shall be binding upon all parties to the agreement. If the charge(s) is not resolved through mediation, it is understood by the parties that the charge(s) will be transferred to the investigative unit for further processing.

**Digitally Signed By: NATASHA LOGAN**

**05/21/2024**

_____
Charging Party

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Houston District Office**
1919 Smith Street, 6th Floor
(346) 327-7700
Website: www.eeoc.gov

## AGREEMENT TO MEDIATE

CHARGE NUMBER: 460-2024-05095
FEPA NUMBER:

Charging Party: NATASHA LOGAN
Respondent: UNITED AIRLINES

This is an agreement by the above parties to participate in mediation in the above referenced charge. The parties understand that mediation is a voluntary process, which may be terminated at any time. The parties and, if they desire, their representatives and/or attorneys, are invited to attend a mediation session. No one else may attend without the permission of the parties and the consent of the mediator(s).

The mediator(s) will not function as the representative of either party. However, the mediator(s) may assist the parties in crafting a settlement agreement. Each party acknowledges being advised to seek independent legal review prior to signing any settlement agreement. The parties acknowledge that they have received a copy of the Mediation Fact Sheet. The parties acknowledge that the mediator(s) possesses the discretion to terminate the mediation at any time if an impasse occurs or either party or the mediator deems the case inappropriate for mediation.

The parties acknowledge that participation in the scheduled mediation does not constitute an admission by either party of any wrongdoing or of a violation of the laws enforced by EEOC. Furthermore, the Charging Party acknowledges that participation in the scheduled mediation by the Respondent does not commit the Respondent to providing a monetary resolution of the matter.

The parties recognize that mediation is a confidential process and agree to abide by the terms of the attached Confidentiality Agreement. The parties acknowledge that if a settlement is reached as a result of the mediation, the assigned mediator(s) is required to report to EEOC any benefits received. This information is reported only for purposes of providing aggregate data to the EEOC for mediation program evaluation purposes, and the individual terms of the agreement will not be disclosed to the public.

**Digitally Signed By: NATASHA LOGAN**

**05/21/2024**

_____
Charging Party

**NATASHA LOGAN**_____
Charging Party Printed Name

_____
Charging Party Phone

# JacksonLewis

Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago IL 60601
(312) 787-4949 | Phone
jacksonlewis.com

MY DIRECT DIAL IS: (518) 512-8715
MY EMAIL ADDRESS IS: ALEXANDER.DAHLE@JACKSONLEWIS.COM

July 25, 2024

**VIA EEOC RESPONDENT PORTAL**

Christina Hernandez
U.S. Equal Employment Opportunity Commission
Houston District Office
Mickey Leland Building
1919 Smith Street, 6th Floor
Houston, TX 77002

Re: *Natasha Logan v. United Airlines, Inc.*,
EEOC Charge No. 460-2024-05095

Dear Investigator Hernandez:

Respondent United Airlines, Inc. ("United") submits this position statement in response to the above-referenced Charge of Discrimination ("Charge") filed by current employee, Associate Analyst of Payroll Operations Natasha Logan ("Logan"). In her Charge, Logan claims that United discriminated against her because of her race and color (Black) by giving her a "low impact" performance rating and denying her a merit increase in her compensation. United categorically denies these allegations.[1]

The facts in this matter are straightforward, and there is no evidence of discriminatory animus based on Logan's race or color (Black). The indisputable evidence shows that Logan received a low impact rating on her 2023 Year-End evaluation, resulting in no annual merit salary increase, because of her poor work performance. Specifically, Logan failed to meaningfully lower her high error rate or learn from her prior mistakes on workers' compensation reconciliations despite frequent hands-on training and coaching from her supervisor(s) and other analysts. Accordingly, Logan's Charge should be dismissed in its entirety.

---

[1] The statement of position set forth herein is based upon an investigation of the facts at the time of the writing. By submitting this position statement, however, United in no way waives its right to present new or additional facts or arguments based upon subsequently acquired information or evidence. Further, this position statement, while believed to be true and correct, does not constitute an affidavit and is not intended to be used as evidence of any kind in any court or administrative proceeding, including but not limited to those before the U.S. Equal Employment Opportunity Commission ("EEOC") or any other state, local, or federal tribunal. This statement of position is intended solely for the purposes of this agency's investigation and settlement discussions between the parties.

**JacksonLewis**

Christina Hernandez
Equal Employment Opportunity Commission
July 25, 2024
Page 2

## I.    UNITED'S POLICIES

### A.    United's Policies Against Discrimination.

United is committed to fostering a diverse workforce. To that end, United provides equal opportunity to all employees regardless of age, citizenship, color, disability, gender, identity, genetic information, national origin, pregnancy, race, religion, sexual orientation, or veteran status (or any other protected category under applicable law). United provides equal employment in hiring, training, promotion, transfers, compensation, benefits, leaves of absences and decisions about discipline or termination of employment.

United's policies, which are titled The Working Together Guidelines (the "WTGs"), require that all employees treat one another with mutual respect and prohibit harassment and discrimination of any kind. All employees are expected to work to achieve a workplace free of discrimination on the basis of age, citizenship, color, disability, gender, gender identity, genetic information, national origin, pregnancy, race, religion, sexual orientation or veteran status (or any other protected category under applicable law) and to report concerns promptly. *See* Exhibit A, WTGs.

## II.   BACKGROUND

### A.    Logan's Employment and Performance History with United.

On January 9, 2023, United hired Logan as an Associate Analyst in the Payroll Operations department based in Houston, Texas. In this role, Logan's responsibilities primarily consist of completing payroll reconciliations for workers' compensation claims with United's workers' compensation vendor. In her Associate Analyst role, Logan reports directly to Michelle Walvoord, the Assistant Manager – Payroll Operations (non-Black).

From January 2023 to August 2023, Logan received a significant amount of hands-on training from Walvoord and other senior analysts regarding how to conduct workers' compensation reconciliations before beginning to perform the analysis work on her own. In September 2023, when Logan started doing workers' compensation reconciliations independently, Logan incurred an error rate of 76.47%, which is a significantly high error rate. After Walvoord reviewed Logan's error rate in September 2023, she actively tried to help Logan understand the errors she made, identified specific areas for Logan to focus on improving, and encouraged her to double check her work for accuracy before submission. Walvoord and Logan discussed Logan's performance issues on several other occasions throughout the remainder of the year, and Logan indicated that she needed additional training opportunities and regular meetings with Walvoord to help her reduce her error rate, which were provided. Despite receiving additional training and coaching from Walvoord, Logan continued to incur a high number of errors in the subsequent months, at 76.19%, 86.67%, 79.07%, 80.95%, 69.23%, and 66.67% from October 2023 through

**JacksonLewis**

March 2024, respectively.

Although the Payroll Operations department does not have a formal policy regarding acceptable error levels, the expectation is that once team members are trained and begin actively working files, they learn from their mistakes, reduce their errors over time, and sustain improvement. Logan, however, failed to meet this expectation and instead repeated errors in her workers' compensation reconciliations and did not improve her overall performance over time. Her failed improvement was a serious concern that Walvoord clearly outlined in her 2023 Year-End evaluation in conjunction with her "low impact" rating. *See* Exhibit B, Logan's 2023 Year-End Evaluation. Since Logan was issued a "low impact" rating, Logan did not receive an annual merit salary increase in 2024, consistent with United's standard policies and practices.

During Logan's 2023 Year-end evaluation on or about January 30, 2024, Walvoord informed Logan that if she did not lower her number of errors on her reconciliations by the 2024 mid-year evaluation, she would be placed on a performance improvement plan. Later, on April 11, 2024, Walvoord met with Logan again to discuss her error rate, which had been 69% since January 2024. Walvoord instructed Logan that she must take necessary steps to avoid making the same errors going forward, should slow down and review her work in more detail before submitting for approval, and be proactive and ask questions if she is having trouble with the reconciliations. Otherwise, Logan would receive a "low impact" rating at her mid-year review and be placed on a performance improvement plan.

Since Walvoord and Logan's April 11, 2024 meeting, Logan's error rate has improved and she is on pace to receive an "on-track" mid-year rating without the need for a performance improvement plan.

**B. Logan's Factually Incorrect Allegations.**

Logan's Charge contains several allegations of alleged discrimination by Michelle Walvoord which are baseless.

First, Logan alleges that she received her "low impact" performance rating because she had "high error rates of 50%" compared to a "team average error rate [of] 55%[.]" This is factually untrue. As discussed above, United's Payroll Operations department does not have a minimum level of acceptable error rates. Rather, United expects analyst error rates to improve consistently over time and for analysts to learn from and avoid making the same mistakes.

Second, Logan claims that coworkers Sandra Tavira, Hamangi Gawade, and Nikil Jadhav "did not receive an unsatisfactory job performance for their high error rates of 50% or higher." However, these individuals are not adequate comparators. For example, Hamangi Gawade and United Nikil Jadhav are contractors—not employees—and do not receive performance evaluations or merit increases from the Company. Third, Associate Analyst Sandra Tavira performs different primary job duties and responsibilities than Logan, which includes, payroll processing for United

**JacksonLewis**

pilots, daily direct deposits, and garnishments. Tavira reports directly to Manager Diana Carrillo, not Michelle Walvoord, and Carrillo was responsible for issuing Tavira her "delivers impact" performance rating (the second lowest out of four performance ratings), not Walvoord. Tavira's slightly higher year-end evaluation rating is a direct result of Tavira's lower error rate and Tavira quickly learning and taking ownership of her various job duties and responsibilities listed above, as evaluated by a different supervisor.

Logan next disagrees with her performance evaluation because she received "seven employee recognitions in a year for outstanding performance" and is "always on time and do all my work." Logan's "employee recognitions" however do not speak to the performance issues noted in her year-end review. Rather, these recognitions largely related to Logan being a "team player" or volunteering to participate in United events and charities. *See* Exhibit C, Logan's Recognitions. Logan's assertion that she does all her work is similarly incorrect, as her error rate shows that she consistently fails to do her work properly, requiring other analysts or her supervisors to review and correct her work.

## III.   ARGUMENT

Logan alleges that United discriminated against her based on her race and color (Black). As discussed below, her claims have no legal or factual support.

### A.    Logan's race/color discrimination claim is baseless.

To establish a prima facie case of discrimination, absent direct evidence, Logan must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was subject to an adverse employment action; and (4) she was treated less favorably than employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). To establish less favorable treatment, Logan must show that United gave preferential treatment to a similarly situated employee "under nearly identical circumstances." *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001); *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 340 (5th Cir. 2021). "Nearly identical circumstances" exist when: (i) the claimant and an alleged comparator employee both have the same job responsibilities; (ii) both employees have "essentially comparable violation histories;" and (iii) both employees either shared the same supervisor or had their employment status determined by the same person. *Hardison v. Skinner*, 2022 WL 2668514, at *3 (5th Cir. July 11, 2022).

If Logan makes her *prima facie* showings, then United must state a legitimate, nondiscriminatory reason for her adverse employment action. *McCoy*, 492 F.3d at 557. Once it does so, Logan has the burden to prove that United offered reasons are false and that the real reason for any adverse employment action was discrimination. *Id*. She cannot meet these burdens.

First, Logan cannot cite to evidence establishing a *prima facie* case of discrimination. For example, Logan was not qualified for her position at the time she received her "low impact" rating

# JacksonLewis

Christina Hernandez
Equal Employment Opportunity Commission
July 25, 2024
Page 5

/ denial of annual merit increase because she failed to meet United's expectations when she made repeated errors in her workers' compensation reconciliations and did not improve her overall performance over time. Moreover, Logan cannot identify a similarly situated employee with a comparable history of performance deficiencies. As discussed above, Tavira had a better error rate than Logan, she performed completely different job duties and responsibilities than Logan in the Payroll Operations department, had a different direct supervisor, and they did not have the same supervisor issue their final 2023 year-end performance rating. Further, Gawade and Jadhav are United contractors not subject to the same review process and circumstances as Logan. Accordingly, Logan cannot establish a discrimination claim.

Second, even if Logan could establish a *prima facie* case of discrimination (she cannot), United has stated legitimate, non-discriminatory reasons for issuing her a "low impact" rating in her 2023 year-end evaluation resulting in her receiving no annual merit salary increase. Specifically, Logan's low impact rating was the direct result of her failure to meaningfully lower her high error rate or learn from her prior mistakes on workers' compensation reconciliations despite frequent hands-on training and coaching from her supervisor(s) and other analysts.

Third, Logan cannot prove that United's stated reasons are false or a pretext for discrimination. Indeed, Logan had a well-documented record (which Logan admits to in her Charge) of high error rates when submitting her workers' compensation reconciliation submissions from her training period, and from September 2023 through March 2024 when she performed the reconciliations on her own. And Logan was provided with training and counseling by Walvoord and others on numerous occasions in 2023 and 2024 to try and help her correct her high error rates on her reconciliation submissions.

In the end, Logan's only evidence of discrimination is her own subjective belief. This alone cannot support a discrimination claim.

## IV. CONCLUSION

For the reasons set forth above, Logan cannot establish that she experienced discrimination during her employment with United. Accordingly United respectfully requests that the Commission dismiss the Charge in its entirety.

Very truly yours,

JACKSON LEWIS P.C.

*/s/ Alexander S. Dahle*

Exhibits A-C

Answer to Position Statement from United Airlines

The position statement given by United Airlines contains no evidence I was not discriminated against. The statement contains fraudulent dates, statements, and events that I will describe below in detail and provide proof of.

United Airlines stated I was properly trained. They have not and will not be able to provide evidence of this claim. In fact, there was no adequate or continuous training. During the pivotal time of my training, I was trained by 4 different employees, as time permitted, with no manual and all with different understanding of the workers compensation material. There were other projects that took precedence such as end of year projects and pilot ratification projects, which was unexpected and faced team challenges. If I had any error on files, I was not told I had errors until over a month or even 2 months later. By the time I received an error report I have already submitted files with same errors so it's a continuous cycle. I have provided proof of how long it took to look at files for errors. Same inconsistency as my training.

In my mid-year review Michelle Walvoord wrote, "workers compensation is a hard subject and takes a long time to understand." There is no measure for success or failure with workers compensation. From June to December the entire team had the same error rate percentage, but I was the only person on the whole team punished for it. I have provided emails Michelle Walvoord sent to the team about high error rates and I have submitted proof of team errors that were sent to the team weekly. I have also included an email as proof that I reach out to Michelle for help and she ignores me, forgets, and pushes me aside.

United Airlines stated that I started workers compensation training in January 2023. This is false, I started training the end of March 2023 and turned in my first file April 20, 2023 due to the randomness of my training. I have submitted proof that my first file was turned in April 20, 2023. The remaining files were submitted sporadically due to the lack of training and people provided to help me. In the meantime, I was put on other job duties, none of which were mentioned in my end of year review.

United Airlines stated I failed expectations. There is no policy, expectations, or training manual on workers compensation. Other departments do not have these issues with workers compensation. Michelle Walvoord (Assistant Manager), not United Airlines made up this process and it is obvious it is not working looking at error percentages from a team perspective. There is no way someone can fail expectations when there are no expectations, manual or approval from United Airlines to introduce such procedures. Since my complaint to the EEOC I have received a great mid-year evaluation July 2024, which proves this scenario was fictious and maliciously done due to my race. Michelle Walvoord told me during my recent evaluation July 2024 I didn't need to complete my part of the evaluation since I was getting an "on track" score. Michelle also said I should have been patient. Michelle sets an invisible goal post that can be manipulated for discrimination purposes.

United Airlines stated that the team error rate was not 55% but I submitted the proof that the team was at the 55% error rate. These reports were submitted weekly to the team in email chats. I also submitted the email that shows the team was at a 46% error rate and having issues in October 2023.

United Airlines stated that Hemangi Gawade and Nikil Jadhav are not on the team, and they are contractors. This is not a true statement, they are listed in all our correspondence, emails, and group chats. They are in every team meeting, they have united.com emails. They are rated for errors the same as everyone on the workers compensation team. I have submitted proof of emails where Michelle is referring to them as team members. Sandra Tavira reports only to Michelle Walvoord for workers compensation and errors. The other manager Diana Carrillo is not trained in workers compensation and cannot evaluate Sandra Tavira on that part of her evaluation. Diana Carrillo is over garnishments not workers compensation. Every assistant manager has a subject matter they specialize in. Sandra Tavira and I both have multiple job duties and we both have high error rates but again I was the only one targeted. Michelle was aware of Sandra high error rate and did not give her a poor evaluation for it. Again, I was the only person given a poor evaluation due to my race.

United Airlines stated that I have poor work performance. There is no way possible to have poor work performance when I handle other job duties more crucial and sensitive to the United Airlines company. In my review Michelle Walvoord did not mention that I handle "Post Confirm". I have never made a mistake or error in Post Confirm. Post Confirm is banking and direct deposit and garnishment transfers. This task is a heavy load and time sensitive dealing with billions of dollars. One wrong button can be catastrophic to the organization. I handle this banking task alone for the entire company payroll of 90,000 employees. United Airlines cannot honestly say that my evaluation was correctly written or warranted when I excel at other job duties. I am also trained in tax audits, garnishments, and payroll. I am one of 3 people trained to do Post Confirm. It was also never mentioned that in my workers compensation I have never received errors for math calculations. Math calculations is a struggle for everyone on the team, but I excel at it. To add insult to injury, I received my poor end of year evaluation in January 2024 but in December 2023 I received an amazing employee recognition that says, "Keep up the good work on WC" (WC stands for workers compensation). If Michelle Walvoord had mentioned my other job duties, she would not have been able to give a poor review and halt my merit raise. I have provided proof of this as well. This again shows that Michelle discriminated against me due to being black and her personal prejudice.

I have also attached proof that the goal post for errors is consistently being changed. Maggie Lopez began to review my files and she would give me new errors on things that Michelle never given me errors on before. Just because she felt that it was incorrect. There are also instances where Maggie Lopez and Michelle Walvoord don't agree on the errors. These discrepancies are due to United Airlines not having a manual, procedures, or a list of what an error is.

After reviewing United Airlines statement there was 5 instances where the statement was inaccurate and deceitful. I have provided proof to refute every inaccuracy with documentation, correspondence, and emails.

In conclusion the statement from United Airlines is filled with inaccuracies and they have not proven that I was not discriminated against. They have however admitted to and reconsidered their wrongdoing by giving me a good performance evaluation after my complaint with the EEOC. I have provided multiple evidence that I was the only person targeted on a team of 10 plus people due to my race. I have also provided proof that my performance evaluation and merit increase was done maliciously and not the same as my other coworkers due to my race. United Airlines has no proof that my error rate was more egregious than my team members and has not proven this wasn't racially motivated. There are no measurements for error in place, no manuals, policies, or procedures. How can one black person be measured or compared with no chart in place, and she is at the same error rate of her entire team? I was targeted and I was treated poorly.

If you do an employment check on me you will find that I made $115K with my previous employer, and I was with that company 8 years. I voluntarily left because I wanted to retire from United Airlines and the benefits were better. I took a pay cut down to $63k because United was my dream job and I knew I could work my way back up to my normal salary eventually. I can return to my previous company tomorrow, but I refuse to let one person run me off. I can also hire an attorney, but we know what that will look like. I am trying to be fair even though I have not been treated fairly. If we cannot come to an agreement, I will have to seek outside counsel due to time and experience.

I am not asking for a large settlement and that is why I have not hired an attorney. I want to stay with United Airlines. I would like my review revised accurately, and my raise. In addition to be transferred to a more productive team, even if that means taking another pay cut or going to the airport. I would also like the extremely high turnover rate in minorities looked at on my team. I have been in corporate 20 years, and I have never seen a turnover rate as high as this. I have been with the company 1 ½ years and 4 minorities have quit this department with no job and 1 terminated for complaining. I also have several witness statements being worked on from people currently on and recently off the team.

Sincerely,

Natasha Logan

TEAM ERROR RATE SENT WEEKLY TO TEAM, THIS SHOWS PROOF OF THE RATE OF THE ENTIRE TEAM. WHEN I WAS GIVEN A BAD REVIEW THE ENTIRE TEAM WAS AT 55% AND I WAS BELOW THE %.

**Week of 04/08/2024-04/12/2024**

| File Count | Notes |
|---|---|
| 15 | Files approved without corrections. |
| 4 | Files approved, but corrections made by us . |
| 6 | Files sent back for corrections where emails are needed. |
| 5 | Files with corrections resubmitted and approved |
| 30 | Total reviewed. |

| Week | Files approved without corrections. | Files approved, but corrections made by me . | Corrections back Approved | Files sent back for corrections where emails or more than 1 TTD rate needs to be applied. | Total Reviewed | Error % |
|---|---|---|---|---|---|---|
| 1/2/2024 | 19 | 19 | | 4 | 42 | 55% |
| 1/8/2024 | 16 | 11 | | 10 | 37 | 57% |
| 1/15/2024 | 26 | 19 | | 14 | 59 | 56% |
| 1/22/2024 | 24 | 17 | | 9 | 50 | 52% |
| 1/29/2024 | 32 | 11 | | 7 | 50 | 36% |
| 2/5/2024 | 11 | 3 | | 0 | 14 | 21% |
| 2/12/2024 | 39 | 10 | | 8 | 57 | 32% |
| 2/19/2024 | 14 | 11 | | 6 | 31 | 55% |
| 2/26/2024 | 10 | 4 | | 10 | 24 | 58% |
| 3/4/2024 | 6 | 6 | 3 | 1 | 16 | 44% |
| 3/11/2024 | 34 | 5 | 3 | 8 | 50 | 22% |
| 3/18/2024 | 28 | 12 | 8 | 13 | 61 | 41% |
| 3/25/2024 | 14 | 3 | 9 | 6 | 32 | 28% |
| 4/1/2024 | 21 | 8 | 6 | 3 | 38 | 29% |
| 4/8/2024 | 13 | 6 | 6 | 4 | 29 | 34% |
| 4/15/2024 | 15 | 4 | 6 | 5 | 30 | 37% |



Congratulations! You've been recognized!

UR — United Recognition <donotreply-pdel@biworldwide.com>
To Logan, Natasha

Retention Policy United-Mailbox-RPT-1yr (1 year)          Expires 12/27/2024

Thu 12/28/2023 10:50 AM

Follow up. Start by Wednesday, March 27, 2024. Due by Wednesday, March 27, 2024.
If there are problems with how this message is displayed, click here to view it in a web browser.

**Congratulations Natasha Logan!**

You have been recognized in the Bravo Rewards - M&A program by Anna Mikuta in the category of core4 - Dependable.

The following has been deposited into your account for immediate use: **10 Points**

Here is what was said about you:

Thank you for your continued focus on WKCP. Your continued focus and perseverance to meet our goals is appreciated. Keep up the good work.
Thanks again,
Anna

# RECOGNITION SENT ON 12/28/23 FOR A GOOD WORK ON WORKERS COMP. (WKCP STANDS FOR WORKERS COMPENSATION)

## MICHELLE SENT THIS EMAIL TO TEAM ON 10/01/2023 TO TELL EVERYONE THE ERROR RATES ARE HIGH



Good Morning Everyone!

I just wanted to touch base with everyone on some trends that we have seen while reviewing your files for 2nd approval.
We reviewed 156 files over the last few days and out of those, **71 were given back for corrections which is 46%** of the files that were turned in.
I'll be honest, I was shocked that this number was so high. All of the files that were returned for corrections now have to be updated and resubmitted for approval creating double work for you and the approver.
As we have stated numerous times, it is more important to submit accurate work than it is to rush through your files and submit them with errors.
There were quite a few files returned due to missing documentation, which surprised me, but the majority of the corrections were for minor keying errors or just a lack of attention to detail.
Most of these errors could have been avoided though by simply taking the time to double check your work before submitting it.
I have also noticed that sometimes a file is turned in and it is incomplete, meaning there are still outstanding questions, emails still pending or payments still pending.
These files should not be submitted until all outstanding issues are resolved, payments are issued and documentation saved.

The bottom line is, these files need more attention to detail before they are turned in for approval.
Each of you know the work that is on your plate and the amount of time you need to dedicate to that work to get it done accurately and in a timely manner.
I am counting on all of you to prioritize your work to ensure everything is completed timely and accurately, but to also speak up if you are struggling to do so and need assistance.
If you are unable to close a file and resolve whatever the issue is, please let me know. If I am unable to meet with you right then due to other priorities, please schedule some time with me.

I understand that many of us are multitasking right now and learning new functions, but **we cannot sacrifice the quality of our work.**
With that said, if you feel that you need to work over this week to get caught up on files, please do so. **Your correction files need to be completed and resubmitted no later than end of day Friday 10/20/23** .

Below are reminders for some of the issues we have seen lately when reviewing your files.

REMINDERS:

- The first PPE date on the United side of the recon should always be the pay period PRIOR to your DOI.
- Please make sure to complete the DC tab. There were many files submitted with this tab not completed.
- The TTD rate calculations should match the TTD rate in Time Tracking in ViaOne.
  If it does not match, you will need to look for another calculation or you will need to reach out to Sedgwick for the correct calculation.
- There should be no gaps in pay periods on the United side or Sedgwick side. If there is REG, VAC, TD or Unpaid during these gaps, they must still be notated on the recon.
- If there are gaps in the Sedgwick payments, please bold the dates where the gap is.
- Sedgwick should NOT pay TTD beyond the RTW date. If they do, please question it.
  An email may need to be sent to the examiner to review the payments made on the claim as there could be an overpayment.
- Always double check your recons prior to submitting to ensure all required documents are included. There were quite a few files submitted that were missing backup.
  Claim Summary, Time Tracking, E-Pay Advices, DC, Wage Statement Calculations, Interval Report, PS Earns Query, Sedgwick Payments, eTA Crew Sheets
- Please ensure you have screenshots of the crew sheets if you are subtracting unpaid days or vacation/holidays from the Sedgwick side.
  When notating these dates on the recon, please include the year and not just the month and day. Most of these recons cross years.

- Make sure your RTW dates are correct. If there is a difference, there needs to be a note in the notes section.
- YTD OIA/OIF totals – these amount should match what is on the PAY ADVICE
  - If there is a previous close during the same year, you have to add the previous close amount to the current YTD amount.
    The TOTAL YTD amount should match your OI ADJ total under the United paid section on the recon. If it does not, there is an issue.

I truly appreciate all of your hard work on your recons as well as all the other tasks that have been assigned along the way.
Please continue to close any backlog files you may have and remember to work your OLDEST files first.

Please let me know if you have any questions or concerns.
Please acknowledge that you have read this email.

Thank you,

**Michelle Walvoord**
Assistant Manager-Payroll Operations

United Airlines | Houston Support Center
609 Main Street, 16th Floor HSCPZ | Houston, TX 77002

**MICHELLE EMAIL TO THE TEAM IN EFFORTS TO REDUCE DELAYS IN GETTING HELP ON FILES. EMAIL INCLUDES ENTIRE TEAM AND LISTS THE TEAM NAMES. PROOF THAT THERE ARE ISSUES IN PROCESS AND TEAM MEMBERS.**



# EMAIL TO MICHELLE TO REMIND HER THAT SHE WAS SUPPOSE TO GIVE ME ADDITIONAL TRAINING. TOOK WEEKS FOR HER TO GET BACK TO ME. EXAMPLE OF POOR TRAINING BEING GIVEN.



Good Morning Michelle,

I just want to send you a reminder to send over the training things we discussed on 4/11/24.

I also would like to know what error rate I am supposed to be at and what are the metrics and standards for errors based on the time on the team. In the beginning and threw out my time on workers compensation you explained to me that it takes a long time to learn workers compensation recons and you never master it because of so many changing variables. I see the team is currently at 37% errors, is that a fair number to assume? I requested a timeline on where I should be after 6 months (May- October) in October 2023, I never received it so I went thru emails and found the team was at 46% error rate. Again I don't want to assume since some employees have been on the team for a few years now. When I received my review in January the team went up to a 55% error rate. I think having some type of chart or expectation will help ease my mind with the poor performance review I received in January and the follow up conversation we had on 4/11/23. I know you said that you and Anna weren't aware that I wouldn't get a raise based on the review but now that leaves me to question would you have changed it if you knew? Our last visit has really made me nervous and anxious so I just want to get as much help as I can before my next review or placed on another project.

Here is a list of things Maggie puts errors on, that you never errored me for:

| RD Effective |
| --- |
| Job Data Page |
| Initials at top of checklist |
| OA/UA |
| Ongoing Quotation Marks |
| SHTD VS REG |

You also explained to me that if my error percentage did not come down I will be written up and given a performance improvement plan in June. So I am anxiously awaiting feedback because June is right around the corner. Thanks for your help.

Thank you,
Natasha Logan
Analyst – Payroll Operations
HSCP2 – Houston (609 Main) Ph: 346-265-5071
Natasha.Logan@united.com
www.united.com

**MAGGIE GAVE ME ERRORS ON ITEMS THAT MICHELLE NEVER GIVEN ME ERRORS ON BEFORE (ERROR RATE INCREASED)**

Young, Robert                                          399679   BWH

| UA Rate | 22.2000 | | 2023 |
|---|---|---|---|
| OI Adj Rate | 15.0570/10.9140 | | |
| SDW Rate | 21.8278 | | |

| FT or PT Employment | FT | | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | Monday, July 24, 2023 | | |

| UA RTW DATE | LOA 11/5/23 | SDW RTW DATE | ONG |
|---|---|---|---|

## United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| 7/15/23-9/23/23 | REG/SHTD | | | |
| 10/07/23 | OCC | 24.00 | | WP |
| | OIA | (24.00) | $ (361.37) | |
| 10/21/23 | OCC | 68.00 | | 52.00 |
| RD EFFECTIVE | OIA | (68.00) | $ (742.15) | |
| | LPD 10/20/23 | | ✓ | |
| | LOA 11/5/23 - CURRENT | | | |
| Total | | 0.00 | $ (1,103.52) | 52.00 |

## Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|---|
| | | | | | $ 436.56 |
| 10/18/23 | 8994 | 10/05/23 | 10/11/23 | | |
| 10/19/23 | 136811059 | 10/12/23 | 10/14/23 | $ 187.10 | |
| 10/20/23 | 136811460 | 10/15/23 | 10/20/23 | $ 374.19 | |
| 10/23/23 | 136811915 | 10/21/23 | 10/21/23 | $ 62.37 | |
| 10/27/23 | 136812941 | 10/22/23 | 10/23/23 | $ 124.73 | |
| 10/30/23 | 136813416 | 10/24/23 | 10/28/23 | $ 311.83 | |
| 11/03/23 | 136814715 | 10/29/23 | 11/01/23 | $ 249.46 | |
| 11/06/23 | 96442382 | 11/02/23 | 11/04/23 | $ 187.10 | |
| 11/09/23 | 96453563 | 11/05/23 | 11/11/23 | $ 436.56 | |
| 11/17/23 | 96480615 | 11/12/23 | 11/18/23 | $ 436.56 | |
| 11/22/23 | 96497288 | 11/19/23 | 11/25/23 | $ 436.56 | |
| 12/01/23 | 96522512 | 11/26/23 | 12/02/23 | $ 436.56 | |
| 12/08/23 | 96545223 | 12/03/23 | 12/09/23 | $ 436.56 | |
| 12/15/23 | 96567608 | 12/10/23 | 12/16/23 | $ 436.56 | |
| 12/22/23 | 96591026 | 12/17/23 | 12/20/23 | $ 249.46 | |
| 12/22/23 | 96595529 | 12/21/23 | 12/23/23 | $ 187.10 | |
| 12/29/23 | 96611147 | 12/24/23 | 12/30/23 | $ 436.56 | |
| 01/05/24 | 96631407 | 12/31/23 | 01/06/24 | $ 436.56 | |
| 01/12/24 | 96654561 | 01/07/24 | 01/10/24 | $ 249.46 | |
| 02/07/24 | 139045732 | 10/12/23 | 01/10/24 | $ 5,675.15 | |
| | | Sedgwick Payments 10/21/23 - 01/10/24 | | $ (10,227.86) | |
| | | LPD 10/20/23 | | | |
| | | LOA 11/5/23 - CURRENT | | | |
| | | Total | | $ 1,122.57 | |

| | | SDW Paid | $ 1,122.57 | |
|---|---|---|---|---|
| | | UAL Deducted | $ (1,103.52) | |
| | | | $ 19.05 | NL 1/5/24 |
| | | | | MW 02/16/24 |

| YTD 2022 | OIA | $ - | |
|---|---|---|---|
| YTD 2023 | OIA | $ (1,103.52) | |
| | TOTAL | $ (1,103.52) | |

| Total Hours | SDW Hourly Rate | | |
|---|---|---|---|
| 52.00 | 21.8278 | $ 1,135.04 | |
| | Deducted by UA | $ (1,103.52) | |
| | Balance | $ 31.52 | |

## Sedgwick Payment Calculation

| Weekly Rate | FTE Hours | $ Per Hour | |
|---|---|---|---|
| 873.11 | 40 | 21.8278 | |
| | | Total OP 19.05 | |

**Notes:**
OA 24 hrs x 15.0570 = 361.37
UA 52 hrs x 10.9138 = 567.5176
OA 16 hrs x 10.9140 = 174.624
567.5176-361.37-174.624 = 31.52

**FIXED**
**INCORRECT JOB DATA SCREEN**
*Missing RD Effective date*
*Missing "OA" on calculations*
**Recon approval checklist not initial/dated**

# MAGGIE CORRECTIONS DON'T MATCH MICHELLE CORRECTIONS

## Lorilla, Jan

## 368111    BWH

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **UA Rate** | 20.5000/21.4000 | | | **2024** | **FT or PT Employment** | | FT | |
| **OI Adj Rate** | 14.3500/21.4000 | | | | **Cost Center** | | | |
| **SDW Rate** | 21.4873 | | | | **Accident Date** | | Friday, September 1, 2023 | |

| | | | |
|---|---|---|---|
| **UA RTW DATE** | **LOA 3/7/24 - CURRENT** | **SDW RTW DATE** | **ONGOING** |

### United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| 8/26/23-9/9/23 | REG | | | 0.00 |
| 09/23/23 | OCC | 0.50 | | 0.00 |
| 10/7/2023-12/30/23 | SHTD | | | 0.00 |
| 01/13/24 | OCC | 16.00 | | WP |
| | OIA | (16.00) | $ (229.60) | |
| 01/27/24 | OCC | 80.00 | | 56.00 |
| | OIA | (80.00) | $ (1,148.00) | |
| 02/10/24 | OCC | 80.00 | | 80.00 |
| RD Effective | OIA | (80.00) | $ (1,712.00) | |
| 02/24/24 | OCC | 48.00 | | 48.00 |
| | OIA | (48.00) | $ (1,027.20) | |
| | LPD 2/19/24 | | | |
| | LOA 3/7/24 - CURRENT | | | |
| **Total** | | **0.50** | **$ (4,116.80)** | **184.00** |

### Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|---|
| 01/12/24 | 139039647 | 09/16/23 | 01/06/24 | | $ 1,119.33 |
| 01/12/24 | 139039634 | 09/18/23 | 12/30/23 | | $ 4,477.32 |
| 01/23/24 | 139042240 | 01/11/24 | 01/17/24 | $ 644.62 | |
| 01/23/24 | 139042241 | 01/11/24 | 01/17/24 | $ 214.87 | |
| 02/28/24 | 9407 | 01/11/24 | 01/17/24 | | $ 859.49 |
| 01/24/24 | 139042441 | 01/18/24 | 01/24/24 | $ 214.87 | |
| 01/24/24 | 139042432 | 01/18/24 | 01/24/24 | $ 644.62 | |
| 01/31/24 | 139044044 | 01/25/24 | 01/31/24 | $ 644.62 | |
| 01/31/24 | 139044049 | 01/25/24 | 01/31/24 | $ 214.87 | |
| 02/07/24 | 139045664 | 02/01/24 | 02/07/24 | $ 214.87 | |
| 02/07/24 | 139045659 | 02/01/24 | 02/07/24 | $ 644.62 | |
| 02/14/24 | 139047448 | 02/08/24 | 02/14/24 | $ 214.87 | |
| 02/14/24 | 139047442 | 02/08/24 | 02/14/24 | $ 644.62 | |
| 02/21/24 | 139049285 | 02/15/24 | 02/21/24 | $ 613.90 | $ 245.59 |
| 02/21/24 | 139049291 | 02/15/24 | 02/21/24 | | $ 214.87 |
| 02/28/24 | 139051116 | 02/22/24 | 02/28/24 | | $ 644.62 |
| 02/28/24 | 139051121 | 02/22/24 | 02/28/24 | | $ 214.87 |
| 03/06/24 | 139053045 | 02/29/24 | 03/06/24 | | $ 214.87 |
| 03/06/24 | 139053040 | 02/29/24 | 03/06/24 | | $ 644.62 |
| 03/13/24 | 141094336 | 03/07/24 | 03/13/24 | | $ 644.62 |
| 03/13/24 | 141094342 | 03/07/24 | 03/13/24 | | $ 214.87 |
| 03/20/24 | 141096212 | 03/14/24 | 03/20/24 | | $ 214.87 |
| 03/20/24 | 141096208 | 03/14/24 | 03/20/24 | | $ 644.62 |
| 03/27/24 | 141098139 | 03/21/24 | 03/27/24 | | $ 644.62 |
| 03/27/24 | 141098272 | 03/21/24 | 03/27/24 | | $ 214.87 |
| 04/03/24 | 141099857 | 03/28/24 | 04/03/24 | | $ 214.87 |
| 04/03/24 | 141099853 | 03/28/24 | 04/03/24 | | $ (64.46) |
| 04/03/24 | 141099853 | 03/28/24 | 04/03/24 | | $ 644.62 |
| 04/10/24 | 141101786 | 04/04/24 | 04/10/24 | | $ (64.46) |
| 04/10/24 | 141101786 | 04/04/24 | 04/10/24 | | $ 644.62 |
| 04/10/24 | 141101790 | 04/04/24 | 04/10/24 | | $ 214.87 |
| | Overpayment 3/28/24 - 6/25/24 | | | $ (859.49) | |
| | LPD 2/19/24 | | | | |
| | LOA 3/7/24 - CURRENT | | | | |
| **Total** | | | | **$ 4,051.86** | |

| | | |
|---|---|---|
| SDW Paid | $ 4,051.86 | |
| UAL Deducted | $ (4,116.80) | |
| | $ (64.94) | |

| | | | |
|---|---|---|---|
| | YTD 2024 | OIA | $ (4,116.80) |
| | YTD 2023 | OIA | $ - |

# MAGGIE CORRECTIONS DON'T MATCH MICHELLE CORRECTIONS

## Lorilla, Jan
**368111    BWH**

| | | | |
|---|---|---|---|
| UA Rate | 20.5000/21.4000 | | |
| OI Adj Rate | 14.3500/21.4000 | **2024** | |
| SDW Rate | 21.4873 | | |

| FT or PT Employment | | FT | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | | Friday, September 1, 2023 | |

| UA RTW DATE | LOA 3/7/24 - CURRENT | SDW RTW DATE | ONGOING |
|---|---|---|---|
| | | | |

## United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| | | TOTAL | $ (4,116.80) | |
| | | | | |
| | | | | |

## Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|---|
| | **Total Hours** | **SDW Hourly Rate** | | | |
| | 184.00 | **21.4000** | | $ 3,937.60 | |
| | | Deducted by UA | | $ (4,116.80) | |
| | | Balance | | $ (179.20) | NL 4/19/24 |

SWD RATE HIGHER THAN UA REATE

| Sedgwick Payment Calculation | | | |
|---|---|---|---|
| Weekly Rate | FTE Hours | $ Per Hour | |
| 859.49 | 40 | 21.4873 | |

| Notes: | 21.4000 - 14.3500 = 7.05 |
|---|---|
| | UA 7.05 * 56 HRS = 394.50 |
| | OA 40 HRS *14.3500 = 574 |
| | 574 - 394.50 = 179.5 |

| Corrections - ML 04.22.2024 | MW Comments 04/23/24 |
|---|---|
| payments should only be for 102 payments. Not 176 code payments | Legal payments are included on the recon if it comes out of the EE's weekly TTD payment. |
| there are negative payments included as positive | Agree - These should be negative on recon |
| payment for 859.49- are the dates correct? WP was also paid to the ee dire | Please confirm this OP is for the waiting period OP as the backup does not state the correct dates. |
| What is the payment 09/18-12/30/23 $ 4477.32 for? Per email , it states this could be TPD payment , however; there isn't a TPD rate noted on ViaONe - how did you confirm the TPD rate for this period ? | We dont need to validate these calculations. The EE was working during this period and no OCC was paid. There is an email that states it is because the EE did not receive full pre-injury wages while on Transitional Duty so |

## This Recon was turned in 11/6 and it was not looked at until 12/05

# Namoca, Edgar                                     352060   BWH

| | | |
|---|---|---|
| UA Rate | 21.1900/24.7800 | |
| OI Adj Rate | 14.1267/12.4000 | **2023** |
| SDW Rate | 12.4000 | |

| | |
|---|---|
| FT or PT Employment | PT |
| Cost Center | |
| Accident Date | Thursday, September 15, 2022 |

| UA RTW DATE | LOA 7/14/23 | SDW RTW DATE | ONG |
|---|---|---|---|

## United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| 09/10/22 | REG | | | |
| 09/24/22 | OCC | 12.00 | | 4.00 |
| | OIA | (4.00) | $ (56.51) | |
| 10/08/22 | OCC | 36.00 | | 36.00 |
| | OIA | (36.00) | $ (446.40) | |
| 10/22/22 | OCC | 36.00 | | 36.00 |
| | OIA | (36.00) | $ (446.40) | |
| 11/05/22 | OCC | 40.00 | | 40.00 |
| | OIA | (40.00) | $ (496.00) | |
| 11/19/22 | OCC | 40.00 | | 40.00 |
| | OIA | (40.00) | $ (496.00) | |
| 12/03/22 | OCC | 36.00 | | 36.00 |
| | OIA | (36.00) | $ (446.40) | |
| 12/17/22 | OCC | 40.00 | | 40.00 |
| | OIA | (40.00) | $ (496.00) | |
| 12/31/22 | OCC | 36.00 | | 36.00 |
| | OIA | (36.00) | $ (446.40) | |
| 01/14/23 | OCC | 36.00 | | 36.00 |
| | OIA | (36.00) | $ (446.40) | |
| 01/28/23 | OCC | 40.00 | | 40.00 |
| | OIA | (40.00) | $ (496.00) | |
| 02/11/23 | OCC | 40.00 | | 40.00 |
| | OIA | (40.00) | $ (496.00) | |
| 02/25/23 | OCC | 40.00 | | 40.00 |
| | OIA | (40.00) | $ (496.00) | |
| 03/11/23 | OCC | 36.00 | | 36.00 |
| | OIA | (36.00) | $ (446.40) | |
| 03/25/23 | REG | | | |
| 04/08/23 | OCC | 4.00 | | 0.00 |
| | OIA | (4.00) | $ (49.60) | |
| | OCC | 4.00 | | |
| | OIA | (4.00) | $ (49.60) | |
| 4/22/23 - 6/17/23 | REG | | | |
| 07/01/23 | OCC | 23.75 | | 23.75 |
| | OIA | (23.75) | $ (294.50) | |
| | | LPD 6/27/23 | | |
| | | LOA 7/14/23 - CURRENT | | |

## Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|---|
| | | HI Claim - No Waiting Period | | | |
| 10/04/22 | 131471923 | 09/20/22 | 10/02/22 | $ 460.57 | |
| 10/04/22 | 131471923 | 10/03/22 | 10/09/22 | $ 248.00 | |
| 10/07/22 | 131473120 | 10/10/22 | 10/16/22 | $ 248.00 | |
| 10/17/22 | 131474727 | 10/17/22 | 10/23/22 | $ 248.00 | |
| 10/24/22 | 131476293 | 10/24/22 | 10/28/22 | $ 177.14 | |
| 10/31/22 | 131477819 | 10/29/22 | 10/30/22 | $ 70.86 | |
| 10/31/22 | 131477818 | 10/31/22 | 11/06/22 | $ 248.00 | |
| 11/07/22 | 131479208 | 11/07/22 | 11/13/22 | $ 248.00 | |
| 11/14/22 | 131481050 | 11/14/22 | 11/20/22 | $ 248.00 | |
| 11/23/22 | 131482934 | 11/21/22 | 11/27/22 | $ 248.00 | |
| 12/02/22 | 131484780 | 11/28/22 | 12/04/22 | $ 248.00 | |
| 12/09/22 | 131486274 | 12/05/22 | 12/11/22 | $ 248.00 | |
| 12/13/22 | 131487067 | 12/12/22 | 12/18/22 | $ 248.00 | |
| 12/19/22 | 131488322 | 12/19/22 | 12/25/22 | $ 248.00 | |
| 12/23/22 | 131489178 | 12/26/22 | 01/01/23 | $ 248.00 | |
| 12/30/22 | 133052429 | 01/02/23 | 01/08/23 | $ 248.00 | |
| 01/09/23 | 133054059 | 01/09/23 | 01/10/23 | $ 70.86 | |
| 01/12/23 | 133055224 | 01/11/23 | 01/17/23 | $ 248.00 | |
| 01/18/23 | 133056223 | 01/18/23 | 01/24/23 | $ 248.00 | |
| 01/25/23 | 133057652 | 01/25/23 | 01/31/23 | $ 248.00 | |
| 02/01/23 | 133059213 | 02/01/23 | 02/07/23 | $ 248.00 | |
| 02/13/23 | 133061606 | 02/08/23 | 02/14/23 | $ 248.00 | |
| 02/15/23 | 133062332 | 02/15/23 | 02/21/23 | $ 248.00 | |
| 03/02/23 | 133066293 | 02/22/23 | 02/28/23 | $ 248.00 | |
| 03/02/23 | 133066293 | 03/01/23 | 03/07/23 | $ 248.00 | |
| 05/08/23 | 134871419 | 03/08/23 | **03/10/23** | $ 106.29 | |
| 06/29/23 | 134883851 | **06/22/23** | 06/28/23 | $ 212.58 | $ 35.43 |
| 06/29/23 | 134883850 | 06/29/23 | 07/05/23 | | $ 248.00 |
| 07/06/23 | 134885251 | 07/06/23 | 07/12/23 | | $ 248.00 |
| 07/13/23 | 134886648 | 07/13/23 | 07/19/23 | | $ 248.00 |
| 07/26/23 | 134889785 | 07/20/23 | 07/26/23 | | $ 248.00 |
| 07/27/23 | 134889840 | 07/27/23 | 08/02/23 | | $ 248.00 |
| 08/03/23 | 136791552 | 08/03/23 | 08/09/23 | | $ 248.00 |
| 08/10/23 | 136792876 | 08/10/23 | 08/16/23 | | $ 248.00 |
| 08/17/23 | 136794947 | 08/17/23 | 08/23/23 | | $ 248.00 |
| 08/24/23 | 136796783 | 08/24/23 | 08/28/23 | | $ 177.14 |
| 09/06/23 | 136800099 | 08/29/23 | 09/06/23 | | $ 318.86 |
| 09/07/23 | 136800158 | 09/07/23 | 09/13/23 | | $ 248.00 |
| 09/14/23 | 136801911 | 09/14/23 | 09/20/23 | | $ 248.00 |
| 09/21/23 | 136803573 | 09/21/23 | 09/27/23 | | $ 248.00 |
| 09/28/23 | 136805094 | 09/28/23 | 10/04/23 | | $ 248.00 |
| 10/05/23 | 136806954 | 10/05/23 | 10/11/23 | | $ 248.00 |
| 10/12/23 | 136808955 | 10/12/23 | 10/18/23 | | $ 248.00 |
| 10/19/23 | 136810888 | 10/19/23 | 10/25/23 | | $ 248.00 |
| 10/26/23 | 136812456 | 10/26/23 | 11/01/23 | | $ 248.00 |
| | | LPD 6/27/23 | | | |

## This Recon was turned in 11/6 and it was not looked at until 12/05

# Namoca, Edgar

### 352060  BWH

| UA Rate | 21.1900/24.7800 | | | |
|---|---|---|---|---|
| OI Adj Rate | 14.1267/12.4000 | **2023** | | |
| SDW Rate | 12.4000 | | | |

| FT or PT Employment | | PT | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | | Thursday, September 15, 2022 | |
| **UA RTW DATE** | **LOA 7/14/23** | **SDW RTW DATE** | **ONG** |

### United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| **Total** | | **8.00** | **$ (6,104.61)** | **483.75** |

### Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|
| | | LOA 7/14/23 - CURRENT | | |
| | | 2 DAYS DTO 9/20/22,9/21/22 | $ (70.86) | |
| | | 1 DAY DTO 9/26/22 | $ (35.43) | |
| | | 1 DAY DTO 10/9/22 | $ (35.43) | |
| | | 1 DAY OJIU 11/24/22 | $ (35.43) | |
| | | 1 DAY OJIU 12/25/22 | $ (35.43) | |
| | | 1 DAY OJIU 1/1/23 | $ (35.43) | |
| | | | | |
| | | | | |
| | | **Total** | **$ 6,058.29** | |

| | | | | |
|---|---|---|---|---|
| | | SDW Paid | $ 6,058.29 | |
| | | UAL Deducted | $ (6,104.61) | |
| | | | $ (46.32) | |
| YTD 2023 | OIA | $ (3,220.90) | | |
| YTD 2022 | OIA | $ (2,883.71) | | |
| | TOTAL | $ (6,104.61) | | |

| | Total Hours | SDW Hourly Rate | | |
|---|---|---|---|---|
| | 483.75 | 12.4000 | $ 5,998.50 | |
| | | Deducted by UA | $ (6,104.61) | |
| | | Balance | $ (106.11) | NL 11/06/23 |
| | | | | MW 12/13/23 |

### Sedgwick Payment Calculation

| Weekly Rate | FTE Hours | $ Per Hour |
|---|---|---|
| 248.00 | 20 | 12.4000 |

**Notes:**
14.1267 - 12.4000 = 1.7367
4 HRS * 1.7367 = 6.9068
8 HRS * 12.4000 = 99.2
6.9068 + 99.2 = 106.1068

**TOTAL REFUND 106.11**

## Corrections Needed 12/05/23

**DC #2 should be through the LPD of 06/27/23**

**Missing DTO 09/20/22, 09/21/22**

**incorrect hours in column E for PPE 04/08/23**

# This Recon was turned in 11/9 and it was not looked at until 1/09

**Thuy, Kim**                                                                    **295217   BWH**

| UA Rate | 33.3000 | | 2023 |
|---|---|---|---|
| OI Adj Rate | 22.2000/20.9840/23.7667 | | |
| SDW Rate | 20.9840 | | |

| FT or PT Employment | | PT | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | | Monday, March 7, 2022 | |
| UA RTW DATE | 10/02/23 | SDW RTW DATE | 10/02/23 |

## United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| | | PREVIOUS CLOSE | | |
| 04/22/23 | OCC | 0.02 | | 0.00 |
| 05/06/23 | OCC | 0.04 | | 0.00 |
| | OIA | (0.02) | $ (0.44) | |
| 5/20/23- 6/3/23 | VAUT/VAC | | | |
| 06/17/23 | OCC | 9.04 | | 9.00 |
| 07/01/23 | OCC | 45.00 | | 45.00 |
| | OIA | (45.00) | $ (1,069.50) | |
| 07/15/23 | OCC | 40.50 | | 40.50 |
| | OIA | (40.50) | $ (962.55) | |
| 07/29/23 | OCC | 45.00 | | 45.00 |
| RD EFFECTIVE | OIA | (45.00) | $ (944.28) | |
| 08/12/23 | OCC | 40.50 | | 40.50 |
| | OIA | (40.50) | $ (849.85) | |
| 08/26/23 | OCC | 45.00 | | 45.00 |
| | OIA | (45.00) | $ (944.28) | |
| 09/09/23 | OCC | 40.50 | | 40.50 |
| | OIA | (40.50) | $ (849.85) | |
| 09/23/23 | OCC | 45.00 | | 45.00 |
| | OIA | (45.00) | $ (944.28) | |
| 10/07/23 | OCC | 22.50 | | 22.50 |
| | OIA | (22.50) | $ (472.14) | |
| 10/21/23 | REG | | | |
| **Total** | | **9.08** | **$ (7,037.17)** | **333.00** |

## Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|---|
| | | PREVIOUS CLOSE | | | |
| 06/29/23 | 134883802 | 06/16/23 | 06/29/23 | $ 944.28 | |
| 07/13/23 | 134886813 | 06/30/23 | 07/13/23 | $ 944.28 | |
| 07/27/23 | 134890053 | 07/14/23 | 07/27/23 | $ 944.28 | |
| 08/10/23 | 136793328 | 07/28/23 | 08/10/23 | $ 944.28 | |
| 08/24/23 | 136797077 | 08/11/23 | 08/24/23 | $ 944.28 | |
| 09/07/23 | 136800400 | 08/25/23 | 09/07/23 | $ 944.28 | |
| 09/21/23 | 136803786 | 09/08/23 | 09/21/23 | $ 944.28 | |
| 10/05/23 | 136807283 | 09/22/23 | 10/01/23 | $ 674.49 | |
| | | 1 DAY OJIU 7/14/23 | | $ (67.45) | |
| | | 1 DAY HOLF 8/4/23 | | $ (67.45) | |
| | | 1 DAY OJIU 9/4/23 | | $ (67.45) | |
| **Total** | | | | **$ 7,082.10** | |

| SDW Paid | $ 7,082.10 |
|---|---|
| UAL Deducted | $ (7,037.17) |
| | $ 44.93 |

| | | YTD 2023 | OIA | $ (8,388.89) |
|---|---|---|---|---|
| | | YTD 2023 | OIA | $ (1,510.85) |

C:\Users\U401915\Documents\Medical Leave Disability Correction Issues and Meeting Docs

| SDW Hourly Rate | 8/15/2024 |
|---|---|

## This Recon was turned in 11/9 and it was not looked at until 1/09

Thuy, Kim                                                                                    295217   BWH

| UA Rate | 33.3000 | | |
|---|---|---|---|
| OI Adj Rate | 22.2000/20.9840/23.7667 | ✓ | 2023 |
| SDW Rate | 20.9840 | | |

| FT or PT Employment | | PT | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | | Monday, March 7, 2022 | ✓ |
| UA RTW DATE | 10/02/23 | SDW RTW DATE | 10/02/23 ✓ |

### United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| | | TOTAL | $ (7,037.17) | |
| | | | | |
| | | | | |

### Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|
| | 333.00 | 20.9840 | $ 6,987.67 | |
| | | Deducted by UA | $ (7,037.17) | NL 11/9/23 |
| | | Balance | $ (49.50) | ML 01.09.2024 |

### Sedgwick Payment Calculation

| Weekly Rate | FTE Hours | $ Per Hour | |
|---|---|---|---|
| 472.14 | 22.5 ✓ | 20.9840 | |

**Notes:**

23.7667 - 20.9840 = 2.7827
OA 2.7827 * 85.50 = 237.9208
UA 9 HRS * 20.9840 = 188.856
237.9208 - 188.856 = 49.0648

**REFUND DUE 49.50** ✓

C:\Users\U401915\Documents\Medical Leave, Disability\Correction Issues and Maggie\EEOC     8/15/2024

**FIXED**

**NO STATUS FOR WKS 5/20-6/3**

**MISSING LAST PPE**

**MISSING EPAY ADVICE**

**YTD 2023 DID NOT MATCH THE TTL OIA AMOUNT**

**NO RD EFFECTIVE NOTED**

**NO OA-UA NOTED IN THE CALCULATIONS NOTES**

**MISSING CREWSHEETS**

**This Recon was turned in 11/18 and it was not looked at until 12/11**

## Kekoa, Matthew                                                            164267   BWH

| UA Rate | 35.6500 | | 2023 |
|---|---|---|---|
| OI Adj Rate | 27.2500/25.3318 | | |
| SDW Rate | 25.3318 | | |

| FT or PT Employment | FT | | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | Saturday, June 3, 2023 | | |

| UA RTW DATE | LOA 7/14/23 | SDW RTW DATE | ONG |
|---|---|---|---|

### United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| 06/03/23 | REG | | | |
| 06/17/23 | OCC | 80.00 | | 64.00 |
| | OIA | (64.00) | $ (1,744.00) | |
| 07/01/23 | OCC | 48.00 | | 48.00 |
| | OIA | (48.00) | $ (1,215.93) | |
| | LPD 6/27/23 | | | |
| | LOA 7/14/23- CURRENT | | | |
| **Total** | | **16.00** | **$ (2,959.93)** | **112.00** |

### Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|---|
| | | HI Claim- No Waiting Period | | | |
| 06/13/23 | 134879831 | 06/07/23 | 06/13/23 | $ 1,013.27 | |
| 06/16/23 | 134880886 | 06/14/23 | 06/20/23 | $ 1,013.27 | |
| 06/26/23 | 134882597 | 06/21/23 | 06/27/23 | $ 1,013.27 | |
| 07/03/23 | 134884358 | 06/28/23 | 07/04/23 | | $ 1,013.27 |
| 07/10/23 | 134885772 | 07/05/23 | 07/11/23 | | $ 1,013.27 |
| 07/17/23 | 134887367 | 07/12/23 | 07/18/23 | | $ 1,013.27 |
| 08/07/23 | 136792070 | 07/19/23 | 07/25/23 | | $ 1,013.27 |
| 07/31/23 | 134890544 | 07/26/23 | 07/31/23 | | $ 868.52 |
| 08/09/23 | 136792761 | 08/01/23 | 08/07/23 | | $ 1,013.27 |
| 08/11/23 | 136793515 | 08/08/23 | 08/14/23 | | $ 1,013.27 |
| 08/18/23 | 136795090 | 08/15/23 | 08/21/23 | | $ 1,013.27 |
| 08/25/23 | 136797223 | 08/22/23 | 08/28/23 | | $ 1,013.27 |
| 09/01/23 | 136798897 | 08/29/23 | 08/31/23 | | $ 434.26 |
| 09/07/23 | 136800472 | 09/01/23 | 09/04/23 | | $ 579.01 |
| 09/08/23 | 136800520 | 09/05/23 | 09/11/23 | | $ 1,013.27 |
| 09/15/23 | 136802265 | 09/12/23 | 09/18/23 | | $ 1,013.27 |
| 09/22/23 | 136803871 | 09/19/23 | 09/25/23 | | $ 1,013.27 |
| 09/29/23 | 136805494 | 09/26/23 | 10/02/23 | | $ 1,013.27 |
| 10/06/23 | 136807401 | 10/03/23 | 10/09/23 | | $ 1,013.27 |
| 10/13/23 | 136809417 | 10/10/23 | 10/16/23 | | $ 1,013.27 |
| 10/20/23 | 136811285 | 10/17/23 | 10/23/23 | | $ 1,013.27 |
| 10/27/23 | 136812739 | 10/24/23 | 10/30/23 | | $ 1,013.27 |
| 11/03/23 | 136814490 | 10/31/23 | 11/06/23 | | $ 1,013.27 |
| 11/09/23 | 136815980 | 11/07/23 | 11/13/23 | | $ 1,013.27 |
| 11/17/23 | 139026046 | 11/14/23 | 11/20/23 | | $ 1,013.27 |
| | | LPD 6/27/23 | | | |
| | | LOA 7/14/23- CURRENT | | | |
| | | 1 DAY DATV 6/23/23 | | $ (144.75) | |
| | | **Total** | | **$ 2,895.06** | |

| | | | |
|---|---|---|---|
| | | SDW Paid | $ 2,895.06 |
| | | UAL Deducted | $ (2,959.93) |
| | | | $ (64.87) |

| | YTD 2023 | OIA | $ (2,959.93) |
|---|---|---|---|
| | YTD 2022 | OIA | $ - |
| | | TOTAL | $ (2,959.93) |

| Total Hours | SDW Hourly Rate | |
|---|---|---|
| 112.00 | 25.3318 | $ 2,837.16 |
| | Deducted by UA | $ (2,959.93) NL 11/17/23 |
| | Balance | $ (122.77) MW 12/14/23 |

## This Recon was turned in 11/18 and it was not looked at until 12/11

## Kekoa, Matthew

### 164267   BWH

| UA Rate | 35.6500 | | | 2023 |
|---|---|---|---|---|
| OI Adj Rate | 27.2500/25.3318 | | | |
| SDW Rate | 25.3318 | | | |

| FT or PT Employment | FT | | |
|---|---|---|---|
| Cost Center | | | |
| Accident Date | Saturday, June 3, 2023 | | |
| UA RTW DATE | LOA 7/14/23 | SDW RTW DATE | ONG |

### United Paychecks & Information

| Pay Period Ending | Description | UAL Paid (Hours) | OI ADJ | Hours paid by SDW and UAL |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

### Sedgwick Payments Received

| Payment Date | Check Number | Benefit Period | SDW Amount Paid | Waiting Period paid to UAL |
|---|---|---|---|---|
| | Sedgwick Payment Calculation | | | |
| | Weekly Rate | FTE Hours | $ Per Hour | |
| | 1013.27 | 40 | 25.3318 | |

| Notes: | 27.2500 - 25.3318 = 1.9182<br>64HRS * 1.9182 = 122.7648 | REFUND DUE 122.77 |
|---|---|---|

**Corrections Needed 12/11/23**

incorrect hours in column E for PPE 06/17/23

LPD incorrect - should be 06/27/23

fix notes and SDW payment split and DC calc

**PROOF THAT I DID NOT START WORKERS COMPENSATION UNTIL APRIL. THEN THE COMPLETION DATES ARE SPORATIC DUE TO RANDOM TRAINING FROM AMMIE, ANNA, MAGGIE AND MICHELLE.**

| | STATUS (Open, In Progress, Issue, Completed) | EE # | Last NAME | First Name | File Printed / Submitted Date | Comments / Updates |
|---|---|---|---|---|---|---|
| I TURNED IN MY FIRST FILE 4/20/2024 | | 94106 | Wells | John | 04/20/23 | |
| | | 149906 | Richards | Barrington | 04/20/23 | |
| | | 104407 | Doganay | Ozan | 05/08/23 | |
| CO-WORKER GAYLE GOT HURT ON 5/3/24, I WAS GIVEN HER FILES TO COMPLETE WHILE SHE WAS OUT | | 43629 | Corpuz | Theresa | 04/20/23 | |
| | | 215801 | Silmon | Amy | 04/20/23 | |
| | | 255289 | Hunt | Angela | 04/20/23 | |
| | | 214673 | Giammetta | Kathleen | 04/20/23 | |
| I KEEP A LOG OF ALL MY FILES | | 343219 | Farfan | Esteban | 04/20/23 | |
| | | 354079 | Monares | Mario | 04/20/23 | |
| I DID NOT START RECONS UNTIL END OF APRIL | | 134523 | Lacey | Thomas | 04/21/23 | |
| | | 352635 | Awad | Peter | 04/20/23 | |
| | | 390343 | Deacon | Kavon | 04/21/23 | |
| | | 383289 | Balwi | Ahmed | 07/05/23 | |
| | | 218385 | Donly | Mark | 04/20/23 | |
| | | 164149 | Higgins | Christopher | 04/21/23 | |
| | | 221500 | Buczarski | Carrol | 04/21/23 | |
| | | 361428 | Gutierrez | Victor | 04/21/23 | |
| | | 225842 | Juth | Christopher | 05/08/23 | |
| | | 129158 | Jackson | Marc | 05/08/23 | |
| | | 140280 | Rosado | David | 05/08/23 | |
| | | | **02.12.23-03.25.23** | | | |
| | | 153754 | Toranzo | Virginia | 05/25/23 | |
| | | 360695 | Low | Milene | 06/28/23 | |
| | | 139634 | Desmond | Sherry | 05/25/23 | |
| | | 253163 | Trajano | Joseph | 06/28/23 | |
| | | 374498 | Vences | Stephanie | 07/06/23 | |
| | | 385984 | Nunez | Yanet | 07/26/23 | |
| | | 386909 | Sellars | Gregory | 05/24/23 | |
| | | 384856 | Cobos - Proano | Wendy | 06/08/23 | |
| | | 387402 | Burgess | Shaun | 05/25/23 | |
| | | 390367 | Sterling | Samantha | 07/26/23 | |
| | | 391796 | Shamser | Onik | 05/25/23 | |
| | | 392723 | Synnott V | Judson | 05/25/23 | |
| | | 167097 | Fields | Darren | 06/09/23 | |
| | | 169210 | Garcia | Jeannie | 06/09/23 | |
| | | 368634 | Williams-Jackson | Madison | 09/29/23 | |
| | | 237722 | Simpson | Marlow | 06/09/23 | |
| | | 341746 | Manalang | Juancho | | No Action Needed - Already Closed |
| | | 118083 | Boeck | Ron | 06/19/23 | |
| | | 139471 | Romozzi | Jerry | 06/21/23 | |
| | ISSUE | 140737 | Morrison | Jeffrey | 07/26/23 | ELY- -hard file |
| | | 263905 | Garcia | Michael | 07/05/23 | |
| | | 212733 | Gierschner | Myra | 06/28/23 | |
| | | | **GAYLE FILES** | | | |
| | | 213933 | Mullins | Michael | 06/28/23 | |
| | | 121095 | Tumbleson | Kerry | 09/29/23 | |
| | | 216578 | Parham | Everette | 06/28/23 | |
| | | 154061 | Iturralde | Mercedes | | ongoing - stil out |
| | | 388755 | Cooley | Matthew | 08/22/23 | |
| | | 37929 | Burke | Phillip | 06/21/23 | |
| | | 153794 | Cornu | Marc | 06/28/23 | |
| | | 222350 | Constantino | Edward | 07/06/23 | |
| | | 190070 | Reyes | Mario | 07/06/23 | |
| | | 351688 | Gadson | Rochelle | 07/06/23 | |
| | | 359467 | Proctor | Marketta | 07/06/23 | |
| | | 390607 | Bertrand | Troy | 09/15/23 | |
| | | 118049 | Parker | Freddy | 07/06/23 | |
| | | 267318 | Sarullo | Salvatore | 07/12/23 | |
| | | 242528 | Cafaro | Nicola | 08/15/23 | |
| | | 359434 | Verplank | Tanner | 08/28/23 | |
| | | 96376 | Lamb | Debra | 07/13/23 | |

**Logan, Natasha**

| | |
|---|---|
| **From:** | Natasha Logan <natasha.logan@yahoo.com> |
| **Sent:** | Monday, March 10, 2025 07:54 |
| **To:** | SAMANTHA SALAZAR |
| **Subject:** | Update to EEOC Case 460-2024-05095 |
| **Attachments:** | raise.jpg; schedule.jpg |

**CAUTION:** The sender of this message is external to the EEOC network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to phishing@eeoc.gov.

Samantha,

Samantha,

Thank you for all your work on my case. I wanted to cover a few things that have come to my attention and some changes in my work status.

As you know I was finally able to transfer to another department in Chicago Nov 4, 2024. I kept my pay, but I am still missing the raise I would have received if I was not targeted. I am thriving and as of 4/1/25, I will receive a 2.5% raise. As stated earlier, I started my new position in November 2024, so my raise is a combination of managers from my old and new position, mostly old position. I have attached my rate increase for your review.

Also, I was not paid for relocation, and I am currently paying a mortgage in Houston and rent in Chicago. Extra expenses I should not have incurred. But due to extreme work conditions I had no choice.

Since relocating to Chicago, I have met other team members that fled Anna Mikuta team, Rick Montoya and Radka Kral, both of which currently live in Houston and Chicago and only left due to work conditions in my same department under the same management.

My understanding is that this has been an ongoing issue but Anna Mikuta and her Asst Managers, ei Michelle Walvoord has some leverage where she is untouchable. There have been at least 4 complaints filed against her and her team every year for discrimination. With no resolve or reprimand.

My old team in payroll is down to 3 employees in the USA. When I started it was 11 of us. Looks like they have stopped Anna Mikuta from hiring new people and they promoted 2 women from Associate Analyst to an Analyst to take some heat off them and- also so they would not testify on my behalf.

Had I gotten my raise last year, the salary amount would be higher. Below I will do some calculations on what I am owed.

What I am asking for in settlement is not outrageous. I have been told by attorneys I can receive much more due to United Airlines negligence in dealing with a problematic team. I am not asking for interest; I think I am being very fair considering the extreme circumstances.

1. Relocation $5,000
2. Raise from last year 2.5% = $1,575
3. Corrected salary amount had I gotten my raise. If I had gotten my raise last year I would have been at $64,575 in 2024. Then my raise for 2025 would have been 2.5% again which would be $1,614.27 and have me at $66,189.375. I would like my salary adjusted to $66,189.375. If my salary is not corrected my raises will never be correct.

I am living paycheck to paycheck since having 2 homes in two states, Illinois state has higher taxes and cost of living as well. I wanted to keep my job and career; I am happy in my new role. But I am in same boat as all the other employees that left running from this department to Chicago, I'm unable to see my family and working like crazy to get time off to see family in Houston. At some point someone needs to be held accountable for what is happening. We all wish we could come back home to Houston.

1

I have also attached my work schedule; I am working 17 overtime shifts (in orange) and I work almost everyday to pay my bills in 2 states.

Thank you,
Natasha

1/3/2025

# UNITED

## 2025 Total Compensation Statement

Name: Natasha Logan
Job Title: Crew Scheduler – Pilot
Employee ID: U401915
Currency: USD

Thank you for your contributions toward United's success in 2024 and for your continued efforts in building United's future. The purpose of this Total Compensation Statement is to provide you with an overview of your compensation and to highlight changes for 2025.[1]

The 2024 Short-Term Incentive Program (STIP)[2] and profit sharing are designed to reward you based on Company performance, and make-up the incentive portion of your total compensation.

This incentive payout will be the greater of the resulting 2024 STIP payout or what you would have received under the 2024 Profit Sharing program.

### 2024 STIP Summary

| | |
|---|---|
| STIP performance level achieved | 175.00% |
| 2024 STIP payout (if STIP is higher than Profit Sharing) OR | 3,062.48 |
| 2024 Profit Sharing payout (if higher than STIP)[3] | 1,841.33 |

Your 2025 base salary adjustment takes into consideration contributions, experience, and salary range placement of your role.

### 2025 Base Salary Adjustment

| | | |
|---|---|---|
| Base Salary[4] | | 63,000.00 |
| Base Salary Adjustment | x 2.50% | 1,575.00 |
| New Base Salary (effective April 1, 2025) | | 64,575.00 |

In addition to your base salary, you are eligible for the 2025 Short-Term Incentive Program (STIP). You will receive the greater of 1) a profit-sharing payment or 2) the 2025 STIP which is available for M&A employees at your level.

### 2025 Target STIP Summary

| | |
|---|---|
| Total STIP cash target (based on level) | 1,750.00 |
| STIP Modifier | 0-200% |

These awards are designed to inspire teamwork and help us achieve our company's short and long-term objectives. Thank you for your continued contributions!

Case: 1:25-cv-08177 Document #: 1 Filed: 07/17/25 Page 52 of 52 PageID #:52

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| February 23 Shift 14:00-22:30 SP_A | 24 Shift 14:00-22:30 SP_A | 25 | 26 | 27 | 28 Shift 14:00-22:30 SP_A | March 1 Shift 14:00-22:30 SP_A |
| 2 Shift 14:00-22:30 SP_A | 3 | 4 | 5 | 6 Shift 14:00-22:30 SP_A | 7 Shift 14:00-22:30 SP_A | 8 Shift 14:00-22:30 SP_A |
| 9 Shift 22:00-06:30 SP_M | 10 Shift 22:00-06:30 SP_M, WFH-ECK | 11 Shift 06:00-14:30 SP_D, WFH-ECK | 12 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 13 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 14 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 15 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A |
| 16 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 17 | 18 Shift 14:00-22:30 SP_A | 19 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 20 | 21 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 22 Shift 06:00-14:30 SP_D |
| 23 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 24 | 25 Shift 14:00-22:30 SP_A | 26 | 27 Shift 06:00-14:30 | 28 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A | 29 Shift 06:00-14:30 SP_D / Shift 14:00-22:30 SP_A |
| 30 | 31 Shift 06:00-14:30 | April 1 Shift 06:00-14:30 | 2 Shift 06:00-14:30 | 3 Shift 06:00-14:30 | 4 Shift 06:00-14:30 | 5 |

☑ **Month View**

## Assigned Bid Line on: 02/23/2025

Not assigned to any bid line on the date.

## Employee Skills:

SP_A, SP_D, SP_M, Trainee, Z-BLUE, WFH, AH, WFH-SICK, WFH-ECK

25.10 prstnsA-lla-b00

© 2025 ARCOS LLC. All rights reserved. | Privacy Statement | Legal Disclaimer